IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14-cv-020075-JTF-dkv |
| | ) | |
| JEREMY MATLOCK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION
AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Jeremy Matlock's Motion to Suppress that was filed on June 23, 2014. (ECF No. 24). On August 4, 2014, the matter was referred to the Magistrate Judge pursuant to 28 U.S.C. §636 (b)(1)(A). (ECF No. 33). An evidentiary hearing on the motion to suppress was held on September 25, 2014. (ECF No. 38). On October 24, 2014, the Magistrate Judge entered her report and recommendation.[1] The undersigned Court granted the Defendant additional time in which to file his objections to the Magistrate Judge's report and recommendation and Defendant's objections were filed on December 22, 2014. (ECF No. 48). On January 5, 2015, the Government filed its response to Defendant's objections to the report and recommendation.[2] (ECF No. 49). For the following reasons, the Court finds the Magistrate Judge's report and recommendation should be adopted and Defendant's Motion to Suppress the Evidence seized during the seizure and search should be DENIED.

---

[1] The transcript of the proceedings was published in the record on December 10, 2014. (ECF No. 45).
[2] On November 13, 2014, the Court granted Defendant's Motion to Continue the Report Date scheduled for November 14, 2014 at 9:30, resetting the matter until December 19, 2014 at 10:00. (Order, ECF No. 42). On the same day, the Court excluded the time through January 16, 2015, pursuant to the Speedy Trial Act, 18 U.S.C. §3161(h)(7)(B)(iv) to allow additional time to prepare. (ECF No. 44).

1

## I. FACTUAL HISTORY

The Court adopts in full the Magistrate Judge's proposed findings of fact. In summary, undercover investigations of Jeremy Matlock began on or about February 22, 2013. The Defendant was arrested on May 22, 2013. On March 19, 2014, a grand jury returned a two-count indictment charging Defendant Jeremy Matlock with: 1) engaging in a money laundering in violation of 18 U.S.C. §1957 and, 2) the knowing and intentional possession with the intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1). Based on the events leading to his arrest and indictment, Defendant filed the pending motion to suppress the evidence alleging violations of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights. (ECF No. 24). After hearing testimony from the witnesses and argument of counsel, the matter was taken under advisement. On October 24, 2014, the Magistrate Judge issued her proposed findings of facts and conclusions of law, recommending that the motion to suppress be denied. (ECF No. 38).

## II. STANDARD OF REVIEW

A United States District Court Judge may designate a United States Magistrate Judge to conduct evidentiary hearings and submit proposed findings of fact and conclusions of law for disposition by the District Judge of certain motions including motions to suppress evidence in criminal cases pursuant to 28 U.S.C. §636(b)(1)(B); *U.S. v. Houston*, Case No. 3:13-10-DCRF, 2013 WL 3975405 *1 (E.D. Tenn. July 29, 2013). The District Judge may accept, reject, or modify in whole or in part, the Magistrate's proposed findings and recommendations. *U.S. v. Raddatz*, 447 U.S. 667, 673-675 (1980), *reh'g den.*, 448 U.S. 916 (1980). See 28 U.S.C. §636 (b)(1)(B).

In criminal cases, the District Judge is required to make a *de novo* determination of those portions of a Magistrate's report and recommendation to which specific objections are made

regarding the dispositive matters contained the report and recommendation. *Id.* at 674-675. While most actions by a Magistrate Judge are reviewed for clear error, proposed recommendations on motions to suppress evidence in criminal matters are subject to *de novo* review. *U.S. v. Quinney,* 238 Fed. Appx. 150, 152 (6th Cir. 2007); U.S. v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001)(holding that a magistrate judge's ruling on dispositive motions such as those for summary judgment or the suppression of evidence must be reviewed *de novo* by the district court).

### III. ANALYSIS

In her report and recommendation, the Magistrate Judge examined whether any or all of the evidence obtained from Defendant's seizure, search and detention on May 22, 2013 should be suppressed. The Defendant contends that on May 22, 2013, while law enforcement officers were in the process of executing search warrants at four of six houses named in the warrants,[3] detectives drove onto a sidewalk, hit him with their vehicle and assaulted him. The Defendant asserts that during his seizure, he was injured, handcuffed, and searched by the officers who found the drugs. The Defendant contends that because he was not inside any of the premises associated with the search warrants, engaged in illegal activity, and without any active and outstanding arrest warrants, his detention and seizure were both unlawful, thereby justifying his motion to suppress all of the evidence seized that day. (ECF No. 24, pp. 1-3).

During the motion hearing, the Magistrate Judge addressed the basis for the warrantless stop and subsequent arrest. (ECF No. 45, pp. 5-6). The Magistrate Judge heard testimony from witnesses that included a Shelby County Sheriff's Detective Jeremy Drewery and three witnesses for the defense, Clarence Burse, Lawyer Jones, and Clifton Bowles.

---

[3] The search warrants authorized searches of properties located at 1485, 1493, 1496, and 1498 South Street. (ECF No. 24, p. 1; ECF No. 45, Exhibits 2-4; Tr., ECF No. 45, pp. 12-13, 17, 19-21, 177). The record indicates the searches were not underway at the time the Defendant was arrested.

3

The Magistrate Judge concluded that Detective Jeremy Drewery's testimony was credible, while finding the defense witnesses' testimony questionable. Regarding the motion to suppress, the Magistrate Judge determined that: 1) it was unnecessary to determine if Matlock was detained in the immediate vicinity of the premises that were to be searched since he was under arrest prior to the execution of the search warrants; 2) Matlock's warrantless arrest was based on probable cause instead of incident to the execution of the search warrants and; 3) probable cause was rightfully established based on the detectives' observations of Matlock's prior narcotics sales and their reasonable belief that he was engaged in a third drug sale on May 22, 2013. (ECF No. 38, pp. 16-20).

The Magistrate Judge also addressed the *Bailey* factors in her report and recommendation, concluding those factors were also satisfied as Matlock was arrested within eyesight of the premises to be searched. The Magistrate Judge noted that said proximity to these properties offered Defendant a chance to either enter the property or flee the area entirely.[4] (ECF No. 38, p. 16). See *Bailey v. United States*, ___ U.S. __, 133 S.Ct. 1031, 1042 (2013). Finally, the Magistrate Judge found that although probable cause existed to arrest Matlock, his initial detention was a reasonable investigative *Terry* stop. *See Terry v. Ohio*, 392 U.S. at 20-21 (1968). Accordingly, the Magistrate Judge recommended that the motion to suppress be denied in full based on the totality of the circumstances, finding specific facts supported the officers' actions. (ECF No. 38, p. 16-22).

The Defendant argues that recent decisions since *Michigan v. Summers*, 452 U.S. 692 (1981), restrict detaining an individual during the execution of a search warrant beyond the

---

[4] During the suppression hearing, the Defendant confirmed the only issue before the Court was the motion to suppress the evidence. Counsel noted the possibility that a motion may be filed attacking the basis for the search warrants due to the discovery that the warrants were based on affidavits regarding the confidential informant's observation of drugs inside the locations as opposed to the controlled buys. (ECF No. 45, pp. 36-38).

premises to be searched. (ECF No. 24, pp. 2-3). Matlock states that because he was standing on the sidewalk across the street from the premises listed in the search warrant, his detention was unlawful. Notably, Defendant argues that: 1) the detention of an occupant beyond the immediate vicinity of the premises to be searched is impermissible; 2) the three factors recognized in *Summers* were not present;[5] 3) justification for the subsequent seizure and search away from the premises did not exist;[6] and 4) reasonable suspicion for an investigatory *Terry* stop did not exist.[7]

Defendant raises the following specific objections to the Magistrate Judge's proposed factual findings: 1) cocaine was found on the Defendant's person; 2) Detective Drewery's testimony was credible over the three defense witnesses' testimony; 3) the location of Defendant's arrest was in front of 1493 South; and finally 4) other incidental arguments regarding the unrecorded surveillance evidence of transactions and telephone conversations between the Defendant and the confidential informant. (ECF No. 48, pp. 2-3; Tr. 45, pp. 24-26).

In response to Defendant's objections, the Government contends that Matlock was lawfully detained in close proximity to the premises to be searched as permitted under *Michigan v. Summers*. *See Michigan v. Summers,* 452 U.S. at 694-95; *Bailey v. U.S*. 133 S.Ct. at 1042. (ECF No. 49, pp. 4-7). Moreover, the Government asserts that Matlock's arrest was lawful based on probable cause established by the two prior drug sales and Matlock's involvement in a third sale on May 22, 2013, as well as the detectives' own personal observations. See *Terry v.*

---

[5] The factors provided in *Summers* that allow the seizure and detention of a party beyond the premises listed in a search warrant are: officer safety, the facilitation and completion of the search, and flight prevention. *See Michigan v. Summers*, 452 U.S. at 692.

[6] In *Mincey v. Arizona*, 437 U.S. 485 (1978), the Supreme Court ruled that only a few exceptions exist for searches outside of the judicial process, without prior approval by a judge or magistrate judge under the Fourth Amendment. did not exist for detaining the defendant away from the searched premises.

[7]*See Terry v. Ohio*, 392 U.S. 1 (1968).

5

*Ohio,* 392 U.S. at 1. Finally, the Government maintains that the officers' reasonable suspicion that Matlock was engaged in illegal activity justified the *Terry* stop. (ECF No. 49, pp. 4-7).

1. **Defendant's Objections to the Magistrate Judge's Proposed Factual Findings:**

   1. The Locations of the Narcotics and Defendant's Arrest

Defendant objects to the Magistrate's finding that cocaine was found on Defendant's person instead of "beside the defendant." (ECF No. 48, p. 2). In the motion to suppress, the Defendant asserts that while he "was standing, handcuffed, bloodied and in his underwear, officers found drugs **on** or about the Defendant's person." (ECF No. 24, p. 2). A conviction for possessing a controlled substance with the intent to distribute can be based upon a showing of actual or constructive possession. *U.S. v. Leary*, 422 Fed. Appx. 502, 507 (6th Cir. 2011) *quoting U.S. v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998). Constructive possession requires evidence supporting the conclusion that the Defendant had the ability to exercise knowing dominion and control over the items in question. *Leary*, 422 Fed. Appx. at 507.

During the hearing, Detective Drewery testified that, as they approached, Matlock was coming from behind 1485 South Street where he was bumped by the officers' vehicle when he stepped out into the street. (ECF No. 45, p. 15). Once the Defendant was bumped by the vehicle, the officer noted that four to six bags of a powdery substance, later testing positive as five ounces of cocaine, fell from Matlock's shorts to the ground. (*Id* at. 18; Exh. 1). Whether the drugs were found on the ground nearby, under the Defendant or on his person does not refute that Matlock was in constructive if not actual possession of cocaine. *Leary*, 422 Fed. Appx. at 507. Therefore, Defendant's objection to the Magistrate Judge's finding that the drugs were on Matlock's person is overruled.

6

Regarding Matlock's location at the time of his arrest in reference to the addresses on the search warrants, the officer testified that he was "in the street directly in the middle of all four of them." (*Id*. at 17). Clarence Burse, a neighbor of Matlock's who lives at 1495 South Street, also testified during the hearing that Matlock was arrested in front of 1498 South Street. (*Id*. at 100-101). The Magistrate Judge also noted that the testimony was unpersuasive that Matlock was arrested three houses down near 1485 South, instead of in front of 1493 South. (*Id*. at pp. 174, 178). Again, there is no reason to discount the Magistrate Judge's factual finding that Matlock was arrested in front of 1493 South.

The transcript indicates that the Magistrate Judge examined this issue extensively, viewing photographic exhibits and constructing her own diagram of the streets, houses and intersections at issue. Counsel for both parties agreed that her map was an accurate depiction of the area. During the hearing, the following exchange occurred:

> THE COURT: Well, he was taken down, according to your witness, I believe, in front of 1493, the driveway between 1493; and I believe, that's one of the properties that was to be searched. I mean, the picture we have Exhibit 1is at the driveway of 1493.
>
> So, I look back and which is between - -
>
> MR. SCHOLL: That's between 1485 and the duplex.
>
> THE COURT: And the duplex.
>
> But that's also listed as one of the parties [sic] to be searched.
>
> MR. SCHOLL: That's correct, your Honor.

ECF No. 45, pp. 172. Later in the hearing, the following was stated:

> THE COURT: And then I think Mr. Burse - -I can go back and look - - didn't he say the officer's car that struck him was kind of - - was pulled kind of into 1493?
>
> MR. SCHOLL: Judge, I'd have to look at his testimony.

7

> THE COURT: So, that's where the cop car struck him at 1493; and that was where he was taken down.

ECF No. 45, p. 174.

> MR. SCHOLL: Everyone says they saw him walking down the street when they came to get him. No one says they saw him on the property.
>
> THE COURT: He's in front of 1493 and headed towards 1496, 98.
> . . . .
>
> He's walking toward all the houses that are to be searched. I agree with that.
> . . . .
>
> THE COURT: I'll share this with counsel. If you want to submit something, you're welcome to; but I wished that either one of you had produced a map. So, we just printed our own little map and plugged in the numbers.
>
> MR. SCHOLL: That's fine.

ECF No. 45, pp. 178-179. As indicated above, there is nothing offered by the parties to rebut the Magistrate Judge's determination that Matlock was arrested in front of 1493 South based on the testimony regarding where the vehicle bumped Matlock, the photographic evidence of the drugs and the descriptions offered regarding the locations of the houses. This objection is also overruled.

   2. <u>The Credibility of Shelby County Sheriff's Detective Jeremy Drewery</u>

The Defendant challenges the fact that the report and recommendation was issued prior to the release of the transcript. (ECF No. 48, p. 2). The Court has read and reviewed in great detail the transcript of the motion hearing. Contrary to Defendant's objections, there is nothing in the transcript that discredits Drewery's testimony as improbable, contradictory or significantly inconsistent with statements in his affidavit. (ECF No. 48, pp. 2-4; Affidavit of Complaint, Exh. 5). The assertions that Matlock's vehicle was never parked in front of 1498 South or that no one

else was observed by the witnesses going into or leaving 1498 South are inconsequential. The affidavit of complaint alleges sufficient facts to support Matlock's arrest. Tenn. R. Crim. P. 3. As required, the affiant offered "more than mere conclusory allegations" despite its failure to include the prior undercover buys or the confidential informant's name. *See State v. Henning*, 975 S.W.2d 290, 295 (Tenn. 1998) and *State v. Moon*, 841 S.W.2d 336, 337 (Tenn. Crim. App. 1992).

Credibility determinations by a Magistrate Judge who personally listened to the witness' testimony should be accepted by the district judge unless, in his *de novo* review of the record, he finds a reason to question the magistrate judge's assessment. *See U.S. v. Brown*, No. 1:09-cr-9, WL 1345463, *1 (E.D. Tenn. May 7, 2007); *U.S. v. Robinson*, No. 1:07-CR-1, 2007 WL 2138635, *1 (E.D. Tenn., July 23, 2007); *U.S. v. Wallace,* No. 1:04-CR-96, 2005 WL 2922226, *9 (E.D. Tenn. Nov. 3, 2005). When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court recognizes that the magistrate judge is in a better position to assess the credibility of the witnesses she sees and hears. *U.S. v. Raddatz*, 447 U.S. 667, 673-76 (1980). There is nothing in the record that leads the Court to question the Magistrate Judge's assessment of Detective Drewery's credibility. Further, there is nothing in the record that leads the Court to question the Magistrate Judge's assessment of the defense witnesses' unreliability. Therefore, this objection is also overruled.

    3. <u>The Lack of Documented Evidence Supporting the Undercover Buys</u>

Defendant objects to the basis for the search warrant and affidavit of complaint because the surveillance camera installed days after the first undercover buy on March 5, 2013 did not record the subsequent undercover transaction on March 25, 2013 or the incident on May 22,

2013 leading to Matlock's arrest.[8] Defendant also objects that the conversation between the confidential informant and Matlock was unrecorded. Defendant believes that failure to record the various drug transactions negatively affect Detective Drewery's credibility. (ECF No. 45, pp. 39, 41).

Detective Drewery testified that the camera, installed a couple of days after the first undercover buy, lacked recording capabilities. The camera was placed in the middle of street about 100 yards from 1498 South. (ECF No. 45, pp. 24-26, 31-32). The testimony during the hearing confirmed the events on May 22, 2013 were not recorded. However, these factors alone do not discredit his testimony or the fact that Matlock was involved in two prior drug transactions, and drugs were discovered on or near Matlock at the time of his apprehension and after negotiating a third deal. (ECF No. 45, p. 21).

Furthermore, none of the facts in the affidavit of complaint appear to be knowingly false or made with reckless disregard as to its veracity in order to support the complaint. *See U.S. v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002). Surveillance of Matlock during a long-term investigation and the use of a confidential informant established that Matlock was engaged in illegal drug activities. Similar to the facts in *Stewart*, the defendant in this case did not support any of his contentions that the facts in the affidavit of complaint were knowingly and intentionally false. He merely stated they were incomplete or without electronically recorded evidence.

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to

---

[8] The first incident ended with the confidential informant purchasing 29.06 grams of powder cocaine from Matlock on March 5, 2013 and .63 grams of heroin from Matlock on March 25, 2013. (ECF No. 45, pp.9-10, 23-). The third deal was arranged on May 21, 2013, the day before the search warrants were issued and the same date of Matlock's arrest. (*Id*. at 11). The third undercover purchase was arranged for 4 and ½ ounces of powder cocaine on May 22, 2013 at 1498 South Street.

> specific false statements that the he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence.

See *U.S. v. Stewart*, 306 F.3d at 305; quoting *U.S. v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Therefore, this objection is also overruled.

    4. <u>The Determination Regarding the Defense Witnesses' Credibility</u>

Defendant summarily objected to the Magistrate Judge's finding that the Defense witnesses' testimony was incredible based on the inconsistencies without making pointed and specific references.[9] After reviewing *de novo* the motion to suppress hearing transcript, the Court agrees with the Magistrate Judge's findings that portions of the Defense witnesses' testimony were contradictory, confusing and therefore implausible.

Defendant's neighbor Clarence Burse, a resident of 1495 South Street, indicated that he was on the porch when the events surrounding Matlock's arrest occurred and that no one else was outside at the time. However, later in his testimony, Burse indicated that his neighbor, Clifton Bowles, was on the other side of the building and approached the front of the premises during the "commotion." (ECF No. 45, pp. 99-100, 104, 109). Mr. Burse also noted the Defendant's car was parked down the street, and then the defendant proceeded to walk around the empty building before he was seized by the officers. (ECF No. 45, pp. 100, 101). Later, during cross-examination, Mr. Burse stated the following:

> Q. He was walking up the street. So, he wasn't driving his car.
>
> A. No ma'am. I guess he had parked his car 'cause, like I say, from the distance where he was from my house I couldn't see the car. I saw him coming down the street back toward the house.

---

[9] As a precaution, the Sixth Circuit has held that "[a] general objection to the entirety of the magistrate's report has the same effect as would a failure to object[,]" and a district court could properly reject arguments on this basis alone. *U.S. v. Robinson*, 352 Fed. Appx. 27, 29 (6th Cir. 2009); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

11

> Q. Did you ever see his car?
>
> A. When I got up to go look out the street I could see his car parked down his house - - down the street. After they had arrested him and everything, I got up and walked to the street; and that's when I saw his car parked out in the street.
>
> Q. So you're not directly across from Mr. Matlock's house, correct?
>
> A. Yes, ma'am. I'm 1495 and 1494 is directly in front of each other.

(*Id*. at p. 111).

Another inconsistency is found regarding whether the officers exited their vehicle before Matlock's apprehension:

> Q: Did you see these individuals get out of the vehicle:
>
> A: No, ma'am, I didn't.
>
> Q. They never got out of the vehicle.
>
> A. Well, those police officers, they got out of the back of it.

ECF No. 45, p. 113.

The transcript reveals that Mr. Burse also stated that after Matlock was "braised" by the officers' vehicle, he started trying to run while the officers pulled the vehicle into a driveway of an abandoned house at 1491 South Street where Matlock was thrown into the bushes and arrested. (*Id.* at pp. 113-114). Furthermore, Mr. Burse did not recall what time it was when he went outside to sit on his porch other than it was still daylight; but he did recall that he had only been outside about thirty minutes before the incident between Matlock and the officers. (*Id*. at pp. 109, 120).

The next defense witness was Lawyer Jones, Matlock's twelve-year old nephew. Contrary to the testimony by Mr. Burse, Lawyer Jones testified that he was outside across the

12

street with his younger brother, Lydell, when his uncle was arrested, which is inconsistent with Mr. Burse's testimony. He also described the truck driven by the officers that hit his uncle as brown instead of yellow as stated by Mr. Burse. (ECF No. 45, pp. 123, 126, 132, 134-136).

The final defense witness, Clifton Bowles, testified that he lives in a duplex at 1497 South Street adjacent to Clarence Bowles. (ECF No. 45, p. 139-141). He contradicted Mr. Bowles' testimony by stating that he was also outside with another neighbor, Dennis Simmons, when the events on May 22, 2013 occurred.[10]

There are some conflicts between the testimony of Detective Drewery and the defense witnesses. However, none of the conflicts, either individually or as a whole, are significant enough to question Detective Drewery's credibility. Therefore, the Magistrate Judge's recommendation regarding the defense witnesses' credibility is accepted by this Court and the objection is overruled. *U.S.* v. *Raddatz*, 447 U.S. at 676.

**II. Defendant's Objections to the Magistrate Judge's Proposed Conclusions of Law:**

Regarding the Magistrate Judge's proposed conclusions of law, Defendant objects to the finding that: 1) the detention pursuant to *Michigan v. Summers* was valid; 2) there was probable cause to arrest the Defendant under *Bailey*; and 3) that there was reasonable suspicion which supported an investigatory *Terry* stop.[11] (ECF No. 48).

1. <u>Was the Detention Valid?</u>

Relying on *Bailey v. United States*, __U.S.__, 133 S.Ct. 1031 (2013), Defendant objects to the Magistrate Judge's finding that the officers were justified in detaining him. (Motion to Suppress, ECF 24, p. 2, ECF No. 48, p. 5, Tr., ECF No. 171-72, 175-77). In the report and

---

[10] Some of the testimony offered by Mr. Bowles was that he and Mr. Simmons were talking on the side of his house at 1497 South Street and then later that they were standing on the corner of the street when the commotion erupted. (ECF No. 45, pp. 141, 147)

[11] The Defendant also respectfully notes the Magistrate Judge issued her report and recommendation prior to the release on December 10, 2014 of the motion to suppress hearing transcript. (ECF No. 45)

13

recommendation, the Magistrate Judge concluded that *Summers* was inapposite to this case as it allows "the detention of an individual, or the "pre-arrest seizure," while his premises are being searched when there is no other probable cause for the detention of the individual." ECF No. 38, p. 14). *See Michigan v. Summers*, 452 U.S. at 696. In response to the Defendant's objections, the Government asserts that *Bailey v. United States* clarified that *Summers* is limited to instances in which officers detain a defendant within the immediate vicinity of the premises to be searched. Also, the Government contends that because Matlock was detained and taken into custody directly in front of an address listed on the search warrant, his detention was lawful. (Reply, ECF No. 49, pp. 4-5, ECF No. 45, p. 155).

The *Summers* case is distinguishable from the facts at issue. In the current matter, Matlock was arrested prior to the search of any of the properties listed on the warrants, based on probable cause to believe he was engaged in criminal conduct, the sale of controlled substances. This was in addition to his two prior drug sales. Defendant's objection to the detention is overruled.

   2. <u>Was there Probable Cause for the Arrest?</u>

Defendant objects to the Magistrate Judge's proposed finding that probable cause existed for his arrest. (ECF No. 38, pp. 8-9; ECF No. 45, p. 70). In the report and recommendation, the Magistrate Judge indicates that, "The court finds that Matlock's affidavit of Complaint, which includes an enumeration of all the illegal items found from the search of his properties, contains sufficient facts to establish probable cause for Matlock's arrest." (ECF No. 38, p. 8. n.3).

The Government clearly established that the officers had probable cause for Matlock's arrest. During the hearing, the Detective testified that on at least two prior occasions, Matlock

sold cocaine and heroin to the informant, which was then given to the undercover officers. (*Id.* at pp. 82, 87). Also, on the day of the arrest, the officers had reason to believe that the Defendant was in possession of narcotics based on their observation of his pants, his holding his hand over the bulge in his pants, and the discovery of the drugs in plain view on the ground in front of the Defendant at the time of his arrest. The Court overrules Defendant's objection to the Magistrate Judge's finding that the officers lacked probable cause for an arrest.

    3. <u>Was There Reasonable Suspicion For The Detectives To Conduct a *Terry* Stop</u>?

The Magistrate Judge concluded that based on the totality of the circumstances, including the detective's initial stop of Matlock, the officers were justified in making a *Terry* stop. (ECF No. 38, p. 21). Defendant specifically objects that the overall circumstances of this case, including that Matlock's conduct on May 22, 2013 justified the officers making a *Terry* stop. (ECF No. 45, p. 61). As noted above, the testimony offered during the hearing supports the Magistrate Judge's finding that the detectives were justified in not only stopping Matlock, but in arresting him based on his behavior at the time and the fact that drugs were discovered on or nearby his person during the stop and seizure. (ECF No. 45, p. 87).

Finally, the Magistrate Judge correctly explained that an affidavit of complaint was needed only to justify Matlock's arrest after execution of the search warrant upon the discovery of any drugs, instead of to establish probable cause for his arrest. (ECF No. 38, p. 3 at n.3, ECF No. 45, p. 166); *See Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). Therefore, the Magistrate Judge properly determined there was reasonable suspicion that criminal activity was occurring, which supported the *Terry* stop. This objection is also overruled.

# CONCLUSION

After conducting a *de novo* review of the Magistrate Judge's report and recommendation, including Defendant's objections, the Government's reply, and the transcript of the motion hearing, the Court adopts the Magistrate Judge's report and recommendation in full and finds that Defendant's Motion to Suppress should be **DENIED**.

**IT IS SO ORDERED** this 3rd day of February, 2015.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE